## KIETH *vs.* CATCHINGS.

1. In 1873 the Freedman's Saving & Trust Company had authority under their amended charter to loan money secured by title to real estate. A deed made for such purpose conveyed title, and therefore a subsequent purchaser under execution against the grantor simply acquired the right remaining in such grantor, to-wit: to redeem by payment of the debt.

2. Evidence to show fraud in the making or procurement of the deeds constituting the chain of title from the F. S. & T. Co. to the defendant, was inadmissible unless notice thereof was shown to the latter.

3. A quit-claim deed from the original grantor to the purchasers from the F. S. & T. Co., executed long after he had parted with his title, and an obligation back to him going to show that he had an interest in the land, were inadmissible as based upon no consideration and as totally irrelevant.

4. A legal title and actual ownership in such grantor after he had conveyed by deed to the F. S. & T. Co. cannot be shown by parol evidence.

5. The transfer by the grantor of the bond to reconvey from the F. S. & T. Co. to another, no matter with what object, could not affect the title of the party holding under the deed until the terms of the bond were complied with.

6. The legal effect of the deed and bond to reconvey was for the court, and parol proof tending to show that they constituted a mortgage was properly excluded, the instruments being unambiguous, and no charge of fraud, accident or mistake being made.

7. A ground for new trial certified by the presiding judge not to be true, cannot be considered.

8. After the grantor parted with the title, no subsequent act of his with other parties, whether fraudulent or not, could affect such title, and therefore all evidence to show such fraud was properly excluded.

9. It was not error for the court, after the question of law upon which the case must turn had been fully argued and the evidence closed, to announce to counsel that the principles involved had been settled in his mind, and then to read in the presence of the jury what he should charge. If counsel had new authorities to read, or additional reasons to submit, it would be the duty of the court to hear him.

10. The instructions of the court, and the refusals to charge, were in accordance with the principles herein announced.

11. The verdict was in obedience to law, in conformity with the evidence, in harmony with the equity, and in strict accord with justice.

12. The principles of law governing a case, separately considered, are not changed, nor their power lessened, by massing the objections thereto together, and in their totality presenting them to the court.

Corporations. Banks. Title. Mortgage. Debtor and creditor. Evidence. Contracts. New trial. Practice in the Supreme Court. Practice in the Superior Court. Before Judge HILLYER. Fulton Superior Court. October Term, 1878.

Reported in the opinion.

HOPKINS & GLENN; REINHARDT & HOOKS; S. WEIL, for plaintiff in error.

MARSHALL J. CLARKE, for defendant.

CRAWFORD, Justice.

The plaintiff seeks to recover a lot of land in the city of Atlanta under the statutory form provided for such cases, and in support of his suit he submits in evidence to the jury deeds from James Atkins to R. S. Eggleston, dated December 9th, 1870, from Perkerson, the sheriff of Fulton county, to J. R. Wallace, dated March 4th, 1874, reciting that the land was sold under a *fi. fa.* in favor of J. R. Wallace, as the property of Eggleston, and then a deed from Wallace to himself. By Chamberlin, a witness, he showed that Catchings, the defendant, held under and through Eggleston, and was in possession when suit began. By Fowler and Bass, that when Wallace's judgment was obtained Fowler had authority from Eggleston to sell the lot, and there rested his cause.

The defendant supported his title by deed from Eggleston to the Freedman's Savings and Trust Company, dated January 27th, 1873, a bond being given to reconvey to Eggleston upon the payment of the sum of $500.00 and interest, also a deed from three commissioners of the Freed-

man's Savings and Trust Company to Chamberlin, Boynton & Co., dated April 24th, 1877, accompanied by certified transcripts from the treasury department of the United States showing title vested in them, and a deed from H. S. Johnson, a partner of the house of Chamberlin, Boynton & Co., to his partners as individuals, dated May 5th, 1877, and then a deed from the said Chamberlin and Boynton to Catchings, the defendant.

Upon the testimony and the law as given in charge, the jury returned a verdict for the defendant, and the plaintiff moved a new trial for errors which he claimed to have been committed.

1. The first assignment of error is that the court should have ruled out the deed from Eggleston to the Freedman's Savings and Trust Company; their bond to reconvey title to Eggleston upon the payment of the $500.00; the deed to Chamberlin, Boynton & Co.; also the certified copy of the manuscripts showing the authority of the commissioners to make the deed and transfer the note of Eggleston.

The objection to this testimony nowhere appears to have been stated to the court below at the time when it was offered, nor in the motion for a new trial, but upon the argument before us it is insisted that it was illegal because the Freedman's Savings and Trust Company had no power under their charter to hold real estate, or accept it as security for loans, and therefore that the deed executed by Eggleston to the Freedman's Savings and Trust Company was void.

This company was chartered in 1865 with power "to receive on deposit such sums of money as may be from time to time offered therefor by, or on behalf of, persons heretofore held in slavery, or their descendants, investing the same in stocks, bonds, treasury notes, or other securities of the United States."

In the year 1870 their charter was amended "by adding thereto at the end thereof the following words:" "And to the extent of one-half in bonds or notes secured by mortgage on real estate in double the value of the loan."

This loan of $500.00 was made to Eggleston, and as a security for its payment the deed was executed and a bond given to reconvey upon the payment of the debt, the contract having been made and the deed executed in 1873, nearly three years after the amendment of their charter. If just such a contract had been made between two of the citizens of this state, we apprehend that there would be no division of opinion as to the exact legal rights of the parties.

Corporations created by other states, and even by foreign nations, are recognized both by our laws and our courts, and no reason occurs to us why the same rights do not attach to this that would to any other.

Since 1871 certainly, and perhaps before, whenever any person conveyed real estate by deed, to secure the payment of a debt, and received a bond for titles back, conditioned that upon the payment of the debt the land should be reconveyed, such conveyance passed the title of such property for that purpose to the grantee, the estate remaining in the grantor being purely equitable, and consisting of his right to redeem the legal title on the payment of the money. It is an equitable mortgage in fact and effect, and until the grantor puts himself in position to claim the benefit of his equity of redemption, he cannot defeat the rights arising to others under his contract.

A purchaser of his interest at sheriff's sale stands in no better relation to it than he did; he too must pay the money before he can claim the land. This has been ruled in the 54 *Ga.*, 45; 55 *Ib.*, 650, 412, 691; 57 *Ib.*, 601. And in the 59 *Ga.*, 507, it was held, Justice Bleckley pronouncing the opinion, that this was the law prior to the act of 1871. It would seem, therefore, that no question could be better settled.

2. That the court erred in not allowing the introduction of evidence going to show fraud in the procurement and making of the deeds by the Freedman's Savings and Trust Company, or their agents or attorneys, or any one holding under them, without first bringing it home to defendant,

especially when the plaintiff held under a sheriff's deed, and the judgment was upon a debt existing before the sale of the land to the Freedman's Savings and Trust Company by Eggleston.

The record shows that no evidence was offered to show fraud in the procurement or making of the deed, and that the opportunity to establish fraud in the defendant, or those under whom she claimed, if notice thereof were brought home to her knowledge, was extended to the plaintiff. This being the fact, we think that the second ground was properly overruled.

3. Because the court ruled out a quit claim deed from Eggleston to Chamberlin, Boynton & Co., and an obligation back to Eggleston, going to show that he had an interest in the land, there being a consideration expressed, and an agreement with Eggleston touching the same.

The testimony shows that this deed was made long after Eggleston had parted with his title; that there was no consideration paid for it, whilst the obligation was nothing but an agreement to look to the land alone for the payment of the debt.

Under the view which we have taken of the original transaction, and the relative rights of the parties, the introduction of this deed could not have changed in any degree the effect thereof, and it was properly excluded.

4. Because the court would not permit the plaintiff to show by parol evidence that Eggleston was the *actual* owner of the land at the time that the judgment was obtained and the sale made.

A legal title and ownership to land cannot be shown in that way.

5. Because the court refused to allow testimony to show that the bond for titles to Eggleston was fraudulently transferred to Allen, to defeat the judgment under which the land was sold.

The transfer of this bond to Allen or any one else, could not affect the title of the party holding the deed, until the

terms of the bond were complied with, and the rights of the owners of the land secured, hence there was no error in this ruling of the court.

6. Because the court erred in not allowing plaintiff to show by parol proof, that the deed from Eggleston was nothing but a mortgage to secure the $500.00, and was so understood.

All the title papers were in proof, had been offered and received, they were without ambiguities, and without the charge of fraud, accident or mistake, hence their legal force, intent and effect were questions for the cou't alone, and parol proof was inadmissible. Questions of construction are for the court, ambiguities, fraud, etc., are for the jury.

7. This ground not being verified by the court, but on the contrary certified to be erroneous, cannot be considered.

8. That the court held that the plaintiff could introduce no testimony to prove fraud that took place after the sale of the land to the F. S. & T. Co., unless a tender of payment was made.

When the deed was given by Eggleston to the F. S. & T. Co., no act of his thereafter with other parties could affect the rights of the company, or change the title, or render an original legal transaction fraudulent, which was not so at the time, and the ruling of the court was therefore right as to the admissibility of such testimony.

9. The error complained of in this ground is, that after the testimony had closed, the court announced to counsel that the questions of law involved in this case had been settled in his mind, and then read in the presence of the jury what he should charge.

Where the questions of law arising under the evidence in a cause, and upon which the verdict must inevitably turn, have been presented, fully argued and ruled upon during the progress of the trial, we can see no objection to the court's stating to the counsel how and in what manner he will instruct the jury thereon, thus saving needless argument and unnecessary delay. Of course if the counsel were to notify

the judge that he had new authorities to read, or additional reasons to submit, it would be the duty of the court to hear him, and doubtless this would always be done.

10. Because the court refused to give in charge to the jury certain written requests asked for by plaintiff's counsel. We think that the first of these was substantially given, that the second and third were properly refused under the law and the proofs, whilst the fourth was rendered unnecessary by plaintiff's amending his description of the lot to correspond with the deeds.

11. Because the court erred in charging the jury—that if Eggleston, before the judgment was obtained against him, had *bona fide* given a deed to the Freedman's Savings & Trust Company to secure the payment of a loan of $500.00, neither Eggleston himself nor Kieth, who claims under him, can recover without first paying the debt, or tendering the money. This was a proper charge, as we have endeavored to show under the first assignment of error.

12. Because the verdict was contrary to law, the evidence, the equity and justice of the case. In our judgment the verdict was in obedience to law, in conformity with the evidence, in harmony with the equity, and in strict accord with its justice.

13. This ground is disposed of by the ruling in the 5th, and need not be repeated here.

14. The substance of this ground is, that the court erred in rejecting parol proof going to show that the land actually belonged to Eggleston when it was sold under the *fi. fa.*, and that the deed was only treated as a mortgage by the Freedman's Savings & Trust Company, that Wallace was put in possession, and that the transfer of the bond was a fraud, that Eggleston was insolvent, that he was not a negro but a white man, that the company was not authorized to make the contract, and that suit was brought on the promissory note.

This broad exception it seems, was intended to include the whole line of the plaintiff's right to recover the land in

dispute, arising both under the law and the evidence, that which had been rejected and that which had been admitted. The opinion of this court is that the principles of law governing a case separately considered are not changed, nor their power lessened, by massing the objections thereto together, and in their totality presenting them to the court.

Having disposed of all the exceptions, it would not be travelling out of the record to say, that the rights of the plaintiff in this suit are clear and indisputable, and his remedies now are ample for their enforcement, but he has not availed himself thereof by this proceeding.

Let the judgment stand affirmed.